# IN THE COURT OF APPEALS OF IOWA

No. 22-0782
Filed August 30, 2023


**KENDON HAUGE SCHWEBKE,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Hardin County, Bethany Currie,

Judge.


        An applicant appeals the summary disposition of his second application for

postconviction relief as time-barred.  **AFFIRMED.**



        Drew H. Kouris, Council Bluffs, for appellant.

        Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee State.



        Considered by Bower, C.J., Badding, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BADDING, Judge.**

Kendon Schwebke was convicted of murder in the second degree in June 2003. Twenty-years later, he appeals the denial of his second application for postconviction relief based on newly discovered evidence that has trickled in over the past decade. We affirm the district court's conclusion that Schwebke's application is untimely under Iowa Code section 822.3 (2020).

## I.      Background Facts and Proceedings

The facts of the murder were summarized by our court in a past appeal:

> Jim Worsfold, a tenant of Schwebke's father, disappeared on September 4, 2002. Friends of Worsfold's, concerned about his disappearance, confronted Schwebke because they were aware of trouble between Schwebke and Worsfold. In fact, two of Worsfold's friends had at various times heard Schwebke threaten to kill Worsfold with a gun. When confronted about Worsfold's disappearance by Dan Freeman, an acquaintance of Worsfold's, Schwebke initially asked for more time to contact Worsfold. Confronted again the next day, Schwebke told Freeman he did not know where Worsfold was but knew he was not coming back. He then said he did not know the location of Worsfold's body but hoped he was in heaven. Aware of the growing concern over the disappearance of Worsfold, Schwebke called Cassell Smith, Worsfold's sometimes girlfriend, with a message he claimed had been left by Worsfold. . . . Smith had at times been with Mike Mikesell and at times with Worsfold and was a source of conflict between the two men.
> Responding to a call by Freeman about Worsfold's disappearance and that he had seen blood at Worsfold's house, on September 9, 2002, officers entered the house that had been occupied by Worsfold without a warrant and found blood in both an upstairs bedroom and on a mattress that had been pulled into the hallway. Thereafter, officers were contacted by Schwebke, who also reported Worsfold's disappearance. Schwebke was asked to come to the sheriff's office for an interview, during which he gave his written consent for the officers to search the farmhouse and its outlying building. . . .
> On September 17 police asked Schwebke to come in for another interview. Schwebke agreed and was interviewed by Agent Mel McCleary. . . . The interview, which lasted some five hours, revealed Schwebke's involvement with Worsfold's murder, his participation in disposing of the victim's body, and information that

led to the discovery of Worsfold's remains. Schwebke implicated Mikesell as Worsfold's murderer, including telling McCleary that Mikesell told him he shot Worsfold in the temple.

When Worsfold's body was found he had been shot in the head with a .22 caliber round. Recovered during the investigation was a .22 caliber, semiautomatic rifle belonging to Schwebke. The cartridge case at the scene of the shooting, stained with Worsfold's blood, the bullet removed from Worsfold, and a test shot fired from Schwebke's rifle were all consistent with one another. On the night of Worsfold's disappearance, Schwebke was seen standing in the dark holding a rifle. The rifle was the same rifle Schwebke asked another to hide for him the day after the shooting. Blood identified as Worsfold's was discovered in the box of Schwebke's truck. . . .

*Schwebke v. State*, No. 07-1027, 2009 WL 605823, at *1 (Iowa Ct. App. Mar. 11, 2009). Schwebke was tried for first-degree murder as either the principal of the crime or an aider or abettor to Mikesell. In his defense, Schwebke placed the blame on Mikesell, testifying to the following version of events:

On the night of Worsfold's death, Mikesell got in Schwebke's truck and made him take him to Worsfold's residence to talk to Worsfold. Mikesell threatened Schwebke with Schwebke's .22 caliber rifle when Schwebke asked Mikesell why he wanted to talk to Worsfold. When he and Mikesell arrived at Worsfold's residence Mikesell went upstairs alone to see Worsfold, who was believed to be asleep, while Schwebke waited downstairs. Schwebke saw that Mikesell had the .22 rifle with him when he went upstairs to "talk" to Worsfold, but he did not believe Mikesell would ever shoot Worsfold and at most they would get in a fist fight. He then heard a shot and Mikesell came running out of the house and stated they needed to get out of there and that he had "warned" Worsfold. They got into Schwebke's truck and left. The next morning Mikesell had Schwebke take him to Dave Bowers's house and asked Bowers to keep the .22 rifle for them. . . . The following morning at breakfast Mikesell threatened him and his father with a .38 caliber derringer and told him to keep his mouth shut and that nobody would get hurt.

Schwebke testified that later that night Mikesell made him go with Mikesell to get rid of Worsfold's body, and this was when he realized Mikesell had in fact shot Worsfold when they had been there a couple of nights earlier. . . .

Schwebke testified he initially refused to help Mikesell move the body but Mikesell pulled the derringer on him and threatened him and his father once again. Schwebke and Mikesell then moved the body from Worsfold's residence to an abandoned barn on an

abandoned farm north of Ellsworth, Iowa. They transported the body in Schwebke's truck. He then returned to the residence where Worsfold was shot, saw blood, and cut out a piece of carpet with blood on it. According to Schwebke, Mikesell told him to "torch the house" and told him to get some acid. Schwebke stated he wanted to tell the police about it right away but was afraid Mikesell would harm him or his father. . . .

*Id.* at *2.

The jury didn't buy Schwebke's story and found him guilty of second-degree murder. We affirmed on direct appeal, finding the trial court correctly denied a motion to suppress and there was sufficient evidence to support his conviction. *State v. Schwebke*, No. 03-1194, 2004 WL 2169400, at *6 (Iowa Ct. App. Sept. 29, 2004). Procedendo issued in January 2005. Schwebke then filed his first application for postconviction relief in March 2006, the denial of which our court also affirmed on appeal. *Schwebke*, 2009 WL 605823, at *1. Procedendo from that appeal issued in May 2009.

Finding no success in state court, Schwebke tried his hand in federal court, petitioning for a writ of habeas corpus in May 2009. Along with claims he had raised in state court, Schwebke added a claim of newly discovered evidence. *See Schwebke v. Fayram*, No. 09-CV-70-LRR, 2011 WL 5320990, at *5 (N.D. Iowa Nov. 2, 2011). But because his state remedies had not been exhausted on that claim, Schwebke dismissed it from the habeas proceeding, which was ultimately unsuccessful. *Id.* at *2. While the federal action was pending, however, Schwebke continued to pursue his newly discovered evidence claim.

In 2010, Schwebke hired private investigator Jan Kidwell to determine whether "there was new or exculpatory evidence in support of another application for postconviction relief." Kidwell's investigation led him to witnesses who

confirmed Schwebke's defense theory at trial—that Mikesell was the triggerman. He obtained affidavits in 2010 from two of Mikesell's former cellmates. Both said that when they were in jail with Mikesell, one in 2002 and the other in 2003, Mikesell told them that he was the one who "shot and killed Jim Worsfold." And one said that a man named Tim Hayes, who testified for the State at Schwebke's trial, "was on a 4 wheeler in the field watching it go down." Kidwell secured two more affidavits in 2013, one from a witness who said that Mikesell and his then-girlfriend were at her house in January 2012, "bragging about everyone else getting busted and they hadn't." The other witness's affidavit talked about a conversation she had with Mikesell in 2011 when someone asked him if he had killed Worsfold. Mikesell responded, "we didn't need to know it's better that way." She also said that Mikesell had burned his boots and clothes after the murder.

Kidwell's investigation ended in 2013, though he said it "was far from complete at that time," listing dozens of witnesses he still wanted to interview in a letter to federal and state law enforcement agencies. Schwebke kept in touch with Kidwell and, in 2019, he agreed to "resume work on the case on a court-appointed basis" if Schwebke filed a postconviction-relief application "based on [his] previous work." Schwebke started that proceeding in August 2019, though an application was not filed until March 2020. In an affidavit attached to the application, which was based on the ground of newly discovered evidence, *see* Iowa Code § 822.2(1)(d), Kidwell summarized the results of his investigation through 2013:

> That Mike Mikesell told a number of people that he killed Jim Worsfold; that Mikesell had planned in advance to kill Worsfold and make it appear that Schwebke had committed the crime; there is information that Mikesell had the gun that was used to kill Worsf[o]ld and then hid it; that Mikesell organized a "clean-up crew" to go to

Worsfold's residence after the murder; that sources have stated that Mikesell stated that his clothes and items from Worsfold's residence were hidden and then burned after the killing; sources indicate that Mikesell stopped wearing his boots and started wearing tennis shoes after the killing.

The district court authorized funds for Kidwell to continue his investigation, which yielded two more affidavits in 2021. One was from a woman Kidwell had spoken to a decade earlier. She stated that before Worsfold was killed, Mikesell told her that "he had the plan for a perfect murder and he would never get caught. He said he was going to kill [Worsfold] and make it look like [Schwebke] did it." The other witness affidavit was from a woman who talked to Mikesell's girlfriend in 2011 or 2012 and was told by the girlfriend that she "would come clean and tell them who really killed [Worsfold] if they will let me off paper." Kidwell also circled back to one of the former cellmates, who elaborated on what Mikesell had told him in jail all those years ago, including that the "Sons of Silence . . . put [the] order out for Mikesell to hit [Worsfold] because he started making methamphetamine for Hells Angels & [were] pissed off."

The State moved for summary disposition, arguing Schwebke's claim of newly discovered evidence was barred under the three-year statute of limitations in Iowa Code section 822.3. The district court agreed, ruling:

> Mr. Schwebke was on notice of the issue of who the real triggerman was in 2003 at the time of his trial, because he testified that Mr. Mikesell committed the murder and that he was not involved. The statute of limitations expired in 2008. Even assuming that the affidavits of potential witnesses obtained by Mr. Kidwell between 2010 and 2013 constitute a new-ground-of-fact exception to the 2008 statute of limitations expiration, they restarted a three-year limitations period deadline that expired possibly as early as 2013 (because he was "alerted" this his potential claim in 2010 when his private investigator began to interview witnesses) and potentially as late as 2016 (three years after the last interview was given during the course

of the investigation). The 2021 affidavits do not restart a new statute of limitations period because the evidence is no longer new, but is merely cumulative of or expanding on evidence previously obtained by Mr. Kidwell. Mr. Schwebke's [postconviction-relief] application filed in 2019 is untimely as it fails to raise a new ground in fact that could not have been raised before 2016.

Schwebke appeals.

## II. Standard of Review

We review summary dispositions of postconviction-relief applications for correction of errors at law. *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019). In doing so, we apply "our summary judgment standards to summary disposition of postconviction-relief applications." *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). The State, as the moving party, bears the burden of showing the absence of a genuine issue of material facts. *Id.* We view the record in the light most favorable to Schwebke, as the nonmoving party, and draw all legitimate inferences from the record in his favor. *Id.*

## III. Analysis

For a postconviction-relief application to be timely, it must be filed within three years of the date the conviction was final or the date the writ of procedendo was issued if the conviction was appealed. *See* Iowa Code § 822.3. Because Schwebke filed his second application in 2020, fifteen years after his conviction became final in 2005, it would generally be time-barred. But the statute provides an escape clause, stating its "limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period." *Id.*

Schwebke claims the affidavits that have been collected by his investigator since 2010 are new grounds of fact that excuse his untimely filing. He argues the

district court erred in concluding otherwise because "[n]either Iowa Appellate Courts or Chapter 822 has provided a reference that there is some three year statute of limitations on newly discovered evidence."

Schwebke is incorrect. Our court considered a similar claim in *Blackwell v. State*, where a postconviction-relief applicant argued "the district court 'read into the escape clause of Iowa Code section 822.3 a three-year statute of limitations for bringing postconviction relief actions upon the discovery of new evidence.'" No. 10-0681, 2012 WL 836766, at *3 (Iowa Ct. App. Mar. 14, 2012). We rejected that argument, holding: "[P]ostconviction relief applications based on 'a ground of fact' that could not have been raised within the three-year limitation period, must also be filed within three years of the discovery of the new ground of fact or be barred." *Id.* at *4. Many of our cases since then have applied this rule. *See, e.g.*, *LeGear v. State*, No. 19-0465, 2020 WL 5229176, at *6 n.6 (Iowa Ct. App. Sept. 2, 2020) ("[A]n applicant must file a [postconviction-relief] application within three years of when the new ground of fact becomes known."); *Fountain v. State*, No. 17-2024, 2019 WL 5424928, at *2 (Iowa Ct. App. Oct. 23, 2019) ("It is undisputed that Fountain became aware of Howard's purported testimony that would completely vindicate Fountain more than two decades ago. Assuming without deciding that it amounted to newly discovered evidence at that time, it was required to be brought within three years of its discovery."); *see also Garcia v. State*, No. 20-0883, 2022 WL 108561, at *2 (Iowa Ct. App. Jan. 12, 2022); *Vaughn v. State*, No. 20-1118, 2021 WL 5467316, at *2 (Iowa Ct. App. Nov. 23, 2021); *Martin v. State*, No. 17-1543, 2018 WL 3655092, at *2 (Iowa Ct. App. Aug. 1, 2018);

*Zaabel v. State*, No. 15-0220, 2016 WL 4035236, at *3 (Iowa Ct. App. July 27, 2016).

Schwebke suggests the time-period should be extended for cases like his where the investigation "by necessity extended over a number of years" because "many witnesses were scared or reluctant to come forward." The focal point of our inquiry, however, is "whether the applicant was or should have been 'alerted' to the potential claim before the limitation period expired." *Cornell v. State*, 529 N.W.2d 606, 611 (Iowa Ct. App. 1994). Schwebke's defense at trial was that Mikesell killed Worsfold without his knowledge. While witnesses who had information about that theory may have been "scared or reluctant to come forward," investigator Kidwell had talked to all but one by 2013. The one new witness did not tell Kidwell anything he and Schwebke did not already know—that Mikesell's girlfriend knew who really killed Worsfold. *See Fountain*, 2019 WL 5424928, at *2 (finding a witness's "republication of the same [information] in more detail" years later "does not breathe second life into the information as newly discovered").

Viewing the record in the light most favorable to Schwebke, and affording him all legitimate inferences, we find there is no genuine issue of material fact that Schwebke failed to file his postconviction-relief application within three years from when he discovered the substance of the witnesses' testimony. *Cf. Moon*, 911 N.W.2d at 143 (finding a genuine issue of material fact "as to whether Moon could have known about the contents of" a witness's affidavit "before the end of the limitations period"). The district court's summary disposition of Schwebke's application as time-barred is accordingly affirmed.

**AFFIRMED.**